N/S
NO CV 30

# VERIFIED CIVIL COMPLAINT

FILED
2025 AUG 27 PM 1:0.
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CAL.
LOS ANGELES
BY:_____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

---

**James William Faernstrom II and Amber Lee Schmutz,**

Plaintiffs,

v. Case No.: 8:25cv01906-DOC-(DFM.)

**Thomas Lewis; Claudia Keshishian; Ralph Ulibari; Pathways Transitional Housing; and DOES 1–10, inclusive,**

Defendants.

---

**VERIFIED CIVIL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
(42 U.S.C. §§ 1983, 1985; 18 U.S.C. §§ 1961–1968 (RICO); Fair Housing Act; Fraud; State Law Claims)

**JURY TRIAL DEMANDED**

---

TO THE HONORABLE COURT:

Plaintiffs James William Faernstrom II ("Faernstrom") and Amber Lee Schmutz ("Schmutz") allege on personal knowledge as to themselves and on information and belief as to all other matters, as follows:

## I. PARTIES, JURISDICTION, AND VENUE

**1.** Plaintiff James William Faernstrom II is an individual residing in Long Beach, Los Angeles County, California. For service and safety purposes, his mailing address is 2436 E. 4th St., PMB 1303, Long Beach, CA 90814. Tel: 562-620-0911; Email: james@einharjer.com.

**2.** Plaintiff Amber Lee Schmutz is an individual residing in Long Beach, Los Angeles County, California. For service and safety purposes, her mailing address is 2436 E. 4th St., PMB 1303, Long Beach, CA 90814. Tel: 562-681-1431; Email: amber@einharjer.com.

3. Defendant Thomas Lewis ("Lewis") is an individual who, upon information and belief, resides at 5488 E. Crest De Villa, Orange, CA 92867. Tel: 714-235-2884; Email: ccksunset@mac.com.

4. Defendant Claudia Keshishian ("Keshishian") is an individual who, upon information and belief, resides at 5488 E. Crest De Villa, Orange, CA 92867, and is believed to be the spouse or partner of Lewis in the operation of rental properties.

5. Defendant Ralph Ulibari ("Ulibari") is an individual associated with defendant Pathways Transitional Housing who, upon information and belief, may be served at 622 Pacific Ave., Long Beach, CA 90813.

6. Defendant Pathways Transitional Housing ("Pathways") is an entity that, upon information and belief, maintains a principal address at 853 Santiago Blvd., Suite 174, Villa Park, CA 92861, and operates transitional housing facilities in Long Beach, California, including at or near 622 Pacific Ave., Long Beach, CA 90813.

7. Defendants DOES 1 through 10, inclusive, are persons or entities whose true names and capacities are currently unknown to Plaintiffs. Plaintiffs are informed and believe, and thereon allege, that each of said fictitiously named defendants participated in, directed, assisted, or benefited from the conduct alleged herein. Plaintiffs reserve the right to amend this complaint to name these defendants when their identities become known.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. §§ 1961–1968 (RICO), and the Fair Housing Act, 42 U.S.C. § 3601 et seq.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred within Los Angeles County and Orange County, California, which are within this judicial district.

## III. FACTUAL ALLEGATIONS

### A. Background and Housing Conditions

11. For approximately three years prior to July 2025, Plaintiffs occupied a studio apartment located at 333 Orange Ave., Apt. 3, Long Beach, CA 90802, which was managed and controlled by defendants Lewis and Keshishian.

12. The rental unit contained numerous habitability defects and code violations, including but not limited to mold contamination, cockroach infestations, and other unsafe conditions that violated California health and safety codes and rendered the premises uninhabitable.

13. Plaintiff Faernstrom's rent was paid directly to defendants by Los Angeles County through the General Relief Housing Assistance program, eliminating any possibility of nonpayment by Plaintiffs.

14. When Plaintiffs attempted to organize with other tenants to address the unsafe and uninhabitable conditions at the property, defendants engaged in retaliatory conduct designed to silence complaints and maintain control over substandard housing conditions.

## B. Fraudulent Eviction and Coercive Settlement

15. In retaliation for Plaintiffs' organizing activities, defendants filed a perjured unlawful detainer action in Los Angeles County Superior Court alleging nonpayment of rent, despite having actual knowledge that rent was being paid directly by Los Angeles County.

16. The filing of this fraudulent eviction action while continuing to collect government rent payments constituted the first predicate act in defendants' systematic scheme to defraud multiple government assistance programs.

17. Under duress and threat of imminent eviction and homelessness, Plaintiffs were coerced into accepting an initial settlement agreement whereby defendant Pathways Transitional Housing issued a check for $2,500 to Plaintiffs in exchange for their agreement to vacate the premises by July 7, 2025.

18. After securing this initial coercive settlement, defendants then presented Plaintiffs with a secondary "deal" whereby Plaintiffs could remain at 333 Orange Ave. until housing at 622½ Pacific Ave. became available, but only if Plaintiffs agreed to additional conditions that were part of defendants' escalating fraud scheme.

19. As part of this secondary agreement, defendants coerced Plaintiffs into surrendering $1,200 of their settlement money (half of the total settlement) back to defendants as a purported "deposit" for the promised housing at 622½ Pacific Ave.

20. Defendants also coerced Plaintiffs into applying for emergency housing assistance through the Multi-Service Center as part of their scheme to legitimize the fraud and secure additional government funding streams while maintaining control over Plaintiffs.

## C. The Escalating Multi-Agency Government Fraud Scheme

21. The secondary "deal" allowing Plaintiffs to remain at 333 Orange Ave. was designed to facilitate defendants' sophisticated scheme to defraud multiple government assistance programs

while extracting additional money from Plaintiffs and maintaining control through escalating coercion:

a. Defendants coerced Plaintiffs into applying for emergency housing assistance through the Multi-Service Center's homelessness prevention program;

b. Simultaneously, defendants continued to collect General Relief Housing Assistance payments for Plaintiffs' continued occupancy at 333 Orange Ave.;

c. Defendant Pathways positioned itself to receive additional government funding as a "transitional housing" provider for the same individuals;

d. Defendants secured an additional $1,200 from Plaintiffs through the fraudulent "deposit" scheme;

e. Defendants made false certifications to the Multi-Service Center regarding housing conditions at 622½ Pacific Ave.

## D. False Certifications and Uninhabitable Housing Placements

**22.** To secure emergency housing assistance funds from the Multi-Service Center, defendants made material false representations and certifications that the unit at 622½ Pacific Ave., Long Beach, CA 90814, was "safe and up to code" when they knew or should have known this was false.

**23.** Upon inspection of the premises at 622½ Pacific Ave., Plaintiffs discovered the unit was systematically overcrowded with individuals living in the kitchen area, contained numerous health and safety violations, and was uninhabitable under any reasonable standard.

**24.** When Plaintiffs reasonably refused to occupy the uninhabitable conditions at 622½ Pacific Ave., defendants attempted to coerce them into accepting a second equally unsuitable placement at 412 Zona Court, Apt. 2, Long Beach, CA 90813.

**25.** Upon arrival at the 412 Zona Court location, Plaintiffs encountered an unknown individual sleeping in the hallway with drug paraphernalia present, confirming the unsafe and dangerous nature of this second placement.

**26.** Plaintiffs documented the uninhabitable conditions at both locations through video recordings and photographs, demonstrating the false nature of defendants' certifications to government agencies.

## E. Escalating Coercion and Witness Intimidation

**27.** When Plaintiffs reasonably refused to occupy either uninhabitable housing placement, defendants escalated their coercive tactics by:

a. Refusing to return the $1,200 "deposit" despite their material breach of representations regarding habitability;

b. Threatening immediate sheriff-enforced eviction from 333 Orange Ave. if Plaintiffs did not accept the deplorable and dangerous housing conditions;

c. Threatening Plaintiffs not to "interfere with the Multi-Service Center process," demonstrating defendants' intent to maintain their fraudulent certifications and continue the government fraud scheme.

**28.** Despite defendants' threats and intimidation, Plaintiffs have informed their caseworker at the Multi-Service Center about the true conditions and defendants' fraudulent representations, exposing the scheme to government authorities.

**29.** Defendants' threats regarding the Multi-Service Center process constitute witness intimidation and obstruction of justice, as they sought to prevent Plaintiffs from reporting the fraud to the very government agency being defrauded.

## F. Ongoing Fraud and Coercion

**28.** Despite Plaintiffs' reasonable refusal to occupy uninhabitable housing and defendants' material breach of the settlement terms by failing to provide safe alternative housing, defendants are now threatening immediate sheriff-enforced eviction from Plaintiffs' current residence at 333 Orange Ave., demonstrating their intent to use court processes as instruments of extortion and to render Plaintiffs homeless rather than fulfill their settlement obligations.

**29.** Defendants made additional false representations to Plaintiffs, claiming they were in communication with Plaintiffs' caseworker at the Multi-Service Center, when no such communication had occurred.

**30.** Based on defendants' false representations, the Multi-Service Center continues to believe that Plaintiffs successfully relocated to safe housing at 621½ Pacific Ave., allowing defendants to maintain their fraudulent certifications.

## G. Pattern of Racketeering Activity

**31.** Upon information and belief, the conduct described herein represents defendants' standard operating procedure and constitutes a pattern of racketeering activity that includes:

a. Manufacturing housing emergencies through perjured unlawful detainer filings while continuing to collect original government rent payments;

b. Extracting settlement money through defendant Pathways as an instrumentality of the fraud;

c. Converting portions of settlement funds through fraudulent "deposit" demands;

d. Making systematic false certifications to emergency assistance programs to secure additional government funding;

e. Providing systematically uninhabitable conditions while collecting from multiple government funding streams simultaneously;

f. Engaging in systematic overcrowding by placing 8-12 individuals in residential units designed for 1-2 persons;

g. Continuing to collect public funds even after tenants abandon unsafe conditions due to uninhabitability.

**32.** Upon information and belief, defendant Ulibari has engaged in systematic SNAP benefits fraud by purchasing or directing the purchase of Electronic Benefit Transfer (EBT) benefits from vulnerable residents with disabilities and mental health conditions, then using said benefits to supply a private catering operation, as evidenced by sustained purchases at warehouse retailers inconsistent with personal household use.

**33.** Upon information and belief, at least one vulnerable young adult with learning disabilities and mental health conditions continued to have their EBT card used by defendant Ulibari for months after the card was taken, until the victim was able to have the card replaced through social services.

### H. Retaliation and Witness Intimidation

**34.** Defendants' systematic retaliation against Plaintiffs for their organizing activities and refusal to facilitate the fraudulent scheme has included:

a. Filing false police reports against Plaintiffs; b. Engaging in intimidation tactics designed to coerce silence; c. Making perjured statements in court filings; d. Threatening immediate homelessness through sheriff-enforced eviction.

**35.** This pattern of retaliation is designed to silence complaints about unsafe housing conditions, maintain defendants' control over public benefit payments, and coerce acceptance of substandard and dangerous housing conditions.

## IV. FIRST CLAIM FOR RELIEF

### (Deprivation of Rights Under Color of State Law - 42 U.S.C. § 1983)

**36.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 35 as though fully set forth herein.

37. By systematically invoking and misusing government processes—including unlawful detainer proceedings, public benefit certifications, and emergency housing program placements—defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

38. Defendants' conduct deprived Plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to:

a. The right to due process of law under the Fourteenth Amendment to the United States Constitution; b. The right to equal protection under the laws; c. Rights secured by federal housing and civil rights laws.

39. Defendants acted with deliberate indifference to Plaintiffs' constitutional rights and knew or should have known that their conduct violated clearly established federal law.

40. As a direct and proximate result of defendants' conduct, Plaintiffs have suffered and continue to suffer damages including but not limited to housing instability, out-of-pocket expenses, emotional distress, and deprivation of their civil rights.

## V. SECOND CLAIM FOR RELIEF

**(Conspiracy to Interfere with Civil Rights - 42 U.S.C. § 1985(3))**

41. Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 40 as though fully set forth herein.

42. Defendants conspired and agreed among themselves to intimidate, retaliate against, and interfere with Plaintiffs' efforts to organize tenants and assert their legal rights under federal and state housing laws.

43. In furtherance of this conspiracy, defendants engaged in overt acts including but not limited to:

a. Filing perjured unlawful detainer actions; b. Threatening sheriff-enforced lockouts and evictions; c. Attempting to coerce acceptance of unsafe and uninhabitable housing conditions; d. Making false reports to law enforcement; e. Engaging in systematic intimidation and harassment.

44. Defendants were motivated by class-based animus against disabled individuals, low-income tenants receiving government assistance, and those who organize to assert their housing rights.

45. As a direct and proximate result of defendants' conspiracy, Plaintiffs have suffered the damages described herein.

## VI. THIRD CLAIM FOR RELIEF

**(RICO Violations - 18 U.S.C. §§ 1962(c) and (d))**

**46.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 45 as though fully set forth herein.

**47.** Defendants constitute an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4), united in purpose and functioning as a continuing unit to achieve the common goal of systematically defrauding government housing assistance programs and exploiting vulnerable tenants.

**48.** The enterprise affects interstate commerce through its systematic fraud involving federal benefit programs, interstate communications, and financial transactions.

**49.** Defendants have conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1), consisting of multiple related acts of:

a. **Mail fraud** (18 U.S.C. § 1341) through the mailing of false certifications and applications to government agencies; b. **Wire fraud** (18 U.S.C. § 1343) through electronic communications containing material misrepresentations made to secure government benefits and defraud assistance programs; c. **Extortion** under the Hobbs Act (18 U.S.C. § 1951) through the use of court processes and threats of eviction to coerce money and property from tenants.

**50.** These predicate acts are related through common participants, victims, methods, and purposes, and constitute a pattern of racketeering activity spanning multiple years and continuing to the present.

**51.** Defendants have also conspired to violate 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

**52.** As a direct and proximate result of defendants' RICO violations, Plaintiffs have been injured in their business or property and are entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## VII. FOURTH CLAIM FOR RELIEF

**(Fair Housing Act Violations - 42 U.S.C. § 3604 et seq.)**

**53.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 52 as though fully set forth herein.

**54.** Defendants have discriminated against Plaintiffs based on disability, in violation of 42 U.S.C. § 3604(f), by:

a. Targeting disabled individuals for exploitation through substandard housing; b. Failing to provide reasonable accommodations; c. Subjecting disabled tenants to different terms and conditions of housing.

**55.** Defendants have engaged in retaliation against Plaintiffs for asserting their rights under fair housing laws, in violation of 42 U.S.C. § 3617.

**56.** Defendants' conduct was intentional, willful, and designed to intimidate and coerce Plaintiffs into accepting discriminatory treatment.

**57.** As a direct and proximate result of defendants' violations of the Fair Housing Act, Plaintiffs have suffered actual damages, and defendants' conduct was willful, wanton, and malicious, entitling Plaintiffs to punitive damages.

## VIII. FIFTH CLAIM FOR RELIEF

### (Fraud and Intentional Misrepresentation)

**58.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 57 as though fully set forth herein.

**59.** Defendants made material misrepresentations of fact to Plaintiffs and to government agencies, including but not limited to:

a. False representations regarding housing habitability and code compliance; b. False representations regarding their intentions to provide safe alternative housing; c. False certifications to government agencies regarding tenant placement and housing conditions.

**60.** Defendants made these representations with knowledge of their falsity and with intent that Plaintiffs and government agencies rely upon them.

**61.** Plaintiffs and government agencies justifiably relied upon defendants' misrepresentations to their detriment.

**62.** As a direct and proximate result of defendants' fraud, Plaintiffs have suffered actual damages and are entitled to punitive damages.

## IX. SIXTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

**63.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 62 as though fully set forth herein.

**64.** Defendants' conduct was extreme, outrageous, and beyond the bounds of decency tolerated in a civilized society.

**65.** Defendants' conduct included systematic threats of homelessness, coercion into dangerous housing conditions, retaliation for asserting legal rights, and exploitation of disabled and vulnerable individuals.

**66.** Defendants intended to cause severe emotional distress to Plaintiffs, or acted with reckless disregard for the probability of causing such distress.

**67.** As a direct and proximate result of defendants' extreme and outrageous conduct, Plaintiffs have suffered severe emotional distress.

## X. SEVENTH CLAIM FOR RELIEF

**(Breach of Implied Warranty of Habitability - Cal. Civ. Code § 1941 et seq.)**

**68.** Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 67 as though fully set forth herein.

**69.** Defendants breached the implied warranty of habitability by:

a. Failing to maintain the original rental premises in a habitable condition; b. Attempting to coerce Plaintiffs into accepting substandard replacement housing that violated habitability standards; c. Making false representations about housing conditions while continuing to collect public benefit payments.

**70.** As a direct and proximate result of defendants' breach of the implied warranty of habitability, Plaintiffs have suffered actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

**A.** Issue emergency injunctive relief including:

1. A temporary restraining order and preliminary injunction enjoining defendants from proceeding with any lockout, eviction, or forced relocation of Plaintiffs;
2. A mandatory order requiring defendants to provide or fund safe, code-compliant temporary housing for Plaintiffs pending resolution of this action;
3. An order prohibiting retaliation, harassment, or coercive contact with Plaintiffs;

**B.** Enter declaratory judgment that defendants' practices violate federal and state law;

**C.** Award compensatory damages in an amount to be proven at trial, but not less than $1,000,000;

**D.** Award treble damages pursuant to 18 U.S.C. § 1964(c);

**E.** Award punitive damages where authorized by law;

**F.** Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 18 U.S.C. § 1964(c), and other applicable provisions;

**G.** Issue a preservation order requiring defendants to preserve and maintain all documents, communications, and financial records relating to housing operations, tenant placements, and government benefit programs;

**H.** Grant leave to amend this complaint to add additional defendants as their identities become known;

**I.** Grant such other and further relief as this Court deems just and proper.

# JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues so triable.

---

# VERIFICATION

I, James William Faernstrom II, declare under penalty of perjury under the laws of the United States that I have read the foregoing Complaint and that the facts stated therein are true and correct based on my personal knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Date: 08/27/2025 _____
James William Faernstrom II
Plaintiff, Pro Se

I, Amber Lee Schmutz, declare under penalty of perjury under the laws of the United States that I have read the foregoing Complaint and that the facts stated therein are true and correct based on my personal knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

Date: 08/27/2025 _____
Amber Lee Schmutz
Plaintiff, Pro Se